COURT OF APPEALS OF VIRGINIA


Present: Judges Russell, AtLee and Senior Judge Haley


ERICK SMITH, A/K/A
 RA'SON NASIR

MEMORANDUM OPINION[*]
PER CURIAM
MAY 19, 2020

v.      Record No. 1821-19-2


CHESTERFIELD-COLONIAL HEIGHTS
 DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Timothy J. Hauler, Judge

(Stephen A. Mutnick; Blackburn, Conte, Schilling & Click, P.C., on
brief), for appellant.

(Michael S. J. Chernau, Senior Deputy County Attorney; Rebecca A.
Imholt, Guardian *ad litem* for the minor children, on brief), for
appellee.


Erick Smith, a/k/a Ra'son Nasir (father), appeals the circuit court's orders terminating his

parental rights to his three children. Father argues that the circuit court erred in finding that the

evidence was sufficient to terminate his parental rights and that the Chesterfield-Colonial Heights

Department of Social Services (the Department) provided "sufficient services" to him before it

sought to terminate his parental rights. Upon reviewing the record and briefs of the parties, we

conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the

circuit court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Father and Kathryn Koch (mother) are the biological parents to R.K., X.S., and S.S., who are the subject of this appeal.[2]  The Department became involved with the family in the fall of 2012, after father was arrested for physically assaulting mother.  At that time, R.K. was two years old, X.S. was a year old, and mother was pregnant with S.S.  Mother was emotionally and mentally unable to care for R.K. and X.S., so they lived with a family friend and then with the paternal grandmother in North Carolina.  After father was released from incarceration, he lived with the children and the paternal grandmother for a few months until they moved back to Chesterfield County for the birth of S.S.  Mother and father had ongoing domestic violence incidents and violated "numerous protective orders," while they continued to live together.

On May 21, 2013, mother and father had a domestic dispute after mother questioned father about marks on R.K.'s body; father assaulted mother, leaving her with a broken arm and injuries to her eye and nose.  Father was arrested for malicious wounding and subsequently threatened mother.  As a result, the Department and mother developed several safety plans.  The

---

[1] The record in this case was sealed.  Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised.  Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion.  Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] The circuit court also entered orders terminating mother's parental rights under Code § 16.1-283(B) and (C)(2).  Mother appealed the circuit court's ruling.  See Koch v. Chesterfield-Colonial Heights Dep't of Soc. Servs., Record No. 1833-19-2.

Department also referred mother for mental health services and short-term crisis intervention services. The Department became increasingly concerned about mother's overuse of pain medication and her mental health and emotional state. In June 2013, mother was hospitalized for psychiatric care. In July 2013, father entered into a plea agreement and pleaded guilty to a reduced charge of assault and battery of a family member; he was sentenced to twelve months in jail, with four months suspended. The Chesterfield County Juvenile and Domestic Relations District Court (the JDR court) entered a preliminary child protective order, adjudicated the children as abused and neglected, and removed the children from the parents' custody.

After the children's removal and father's release from incarceration, the Department offered numerous services to father, including financial assistance to father and his girlfriend for their housing. The Department arranged for random drug tests and visitations between father and the children. The Department also referred father to parent coaching, domestic violence classes, and individual therapy. In addition, the Department referred father for a psychological evaluation. In April 2014, Dr. Craig King, a licensed clinical psychologist and social worker, completed a psychological evaluation for father. Dr. King expressed concern that father would "have difficulty controlling his antisociality and narcissism that fuels his anger and maladaptive behavior." Dr. King recommended that father participate in individual therapy, but forewarned that "he may not be open to individual therapy because he lacks the ego strength that is required in therapy in order to make personality and life changes." Father complied with all of the Department's services, except for individual counseling because he did not think that he needed it.

The Department continued to work with father, and in July 2015, the Department recommended that the court award joint custody of the children to father and his girlfriend, Emilie Spruill, because Spruill provided financial support, emotional support, and transportation

to the family. On August 10, 2015, the JDR court awarded joint legal and physical custody of the children to father and Spruill. Mother was not present at the hearing.

Unbeknownst to the Department, Spruill and father later ended their relationship "due to domestic issues," and Spruill petitioned the JDR court to be relieved of custody, which the JDR court granted on April 10, 2017. On August 27, 2017, father and Spruill were involved in a "road rage incident."[3] Father became angry after Spruill refused to pull over her car to talk with him, so he followed her and rammed into the rear and side of her car. Spruill called the police, who arrested father for domestic assault, obstruction of justice, and hit and run; he was released on bond two days later. Although father also was indicted for attempted malicious wounding, he ultimately pleaded guilty to a reduced charge of reckless driving and hit and run under the terms of a plea agreement.[4] Father was incarcerated from December 2017 until September 2018.

The Department was not notified of the charges against father until December 2017. After father was arrested, mother cared for the children. When the Department learned of father's arrest and that mother was caring for the children, the Department petitioned to remove the children and placed them in foster care. On December 11, 2017, the JDR court adjudicated that the children were abused or neglected. On February 5, 2018, the JDR court entered a dispositional order with concurrent goals of relative placement and adoption. Father did not appeal the ruling.

When the children entered foster care the second time, the Department did not pursue a goal of return home because it previously had attempted to return the children home and that goal was unsuccessful. Therefore, the Department did not offer services to father, and he never

---

[3] The children were not present during the incident.

[4] Father testified that the domestic assault and obstruction of justice charges were "thrown out."

- 4 -

asked the Department what he needed to do to have the children returned to him after it informed him that "return home" was not an option.

The Department investigated relative placements, including the maternal and paternal grandmothers. The maternal grandmother did not want to be considered a relative placement, and the paternal grandmother was not approved through the Interstate Compact on the Placement of Children. When the Department determined that relative placement was not an option, it amended the foster care goal to adoption. On October 1, 2018, the JDR court approved the foster care goal of adoption for the children; the parents did not appeal the permanency planning order. At the recommendation of the children's therapists, the Department ended all contact between the children and the parents.

On April 15, 2019, the parties appeared before the JDR court, which ordered a drug test for both parents. Father tested negative.[5] On the same day, the JDR court terminated father's parental rights. Father appealed the JDR court's ruling.

On November 7, 2019, the parties appeared before the circuit court. The Department presented evidence about the children and their well-being. The social worker described all three children as "very bright," but the children, especially R.K. and X.S., also had displayed anger, aggression, and tantrums. The social worker testified that R.K., who was almost ten years old, "struggle[d] the most of all three children." R.K. had "tantrums" that escalated into self-harming behavior, property destruction, or physical aggression toward his siblings or the foster parents. He had been admitted to a residential treatment facility, where he received individual counseling, group counseling, and medication management. R.K. reported to his counselor that father had hit him with an open hand and belt "on multiple parts of his body," and R.K. had seen father hit

---

[5] In contrast, mother tested positive for alcohol and buprenorphine.

and kick mother, as well as threaten to kill her with a knife.[6] R.K. was released from the facility approximately one month before the circuit court hearing and was receiving outpatient therapy and medication management.[7]

X.S., who was almost nine years old, received outpatient therapy, medication management, and in-home counseling services. S.S., who was six years old, also received outpatient counseling and medication management. X.S. and S.S. had improved behaviorally since entering foster care.

Dr. Eric Freeman, the children's pediatrician, first started treating them when they were in the custody of mother and father. The biggest concerns for Dr. Freeman had been the children's behavior and chronic anemia. To address the behavioral concerns, Dr. Freeman referred R.K. and X.S. for psychological evaluations; the children completed the evaluations, but the parents did not follow through with the recommendations. To address the anemia, Dr. Freeman prescribed an iron supplement for the children. The parents were not always compliant with the children's medication or nutrition; however, once the children entered foster care, Dr. Freeman noticed that the "anemia issues almost self-corrected without medical management."

At the conclusion of the Department's evidence, father moved to strike, which the circuit court denied. Father testified and expressed his desire for the children to return to his care. He reported that he was working and living with his aunt in North Carolina. Father was not in therapy and testified that he was working on his anger issues through his diet.

---

[6] Father admitted to hitting R.K. on his hand but nowhere else. Father admitted hitting mother.

[7] The Department was setting up in-home counseling for R.K.

At the conclusion of all of the evidence, father renewed his motion to strike, which the circuit court denied. After hearing the parties' arguments, the circuit court terminated father's parental rights to the children under Code § 16.1-283(B) and (C)(2). This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Father argues that the circuit court erred in finding that the evidence was sufficient to terminate his parental rights and that the Department provided "sufficient services" to him before it sought to terminate his parental rights.

Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

"[T]he statutory definitions of an abused or neglected child do not require proof of actual harm or impairment having been experienced by the child. The term 'substantial risk' speaks *in*

*futuro* . . . ." Farrell v. Warren Cty. Dep't of Soc. Servs., 59 Va. App. 375, 416 (2012) (quoting

Jenkins v. Winchester Dep't of Soc. Services, 12 Va. App. 1178, 1183 (1991)). "[S]ubsection B

[of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment

call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the

underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71 (2005)

(quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63

(2003)). "Virginia's jurisprudence recognizes that 'past actions and relationships over a

meaningful period serve as good indicators of what the future may be expected to hold.'"

Farrell, 59 Va. App. at 425 (quoting Winfield v. Urquhart, 25 Va. App. 688, 695-96 (1997)); see

also Geouge v. Traylor, 68 Va. App. 343, 375 (2017).

Here, the Department presented extensive evidence regarding the family's history of

domestic violence and mother's mental illness. The Department previously had removed the

children from the parents' custody and provided numerous services to the parents. The children

were returned to father's custody. The Department, however, had to remove the children again

in December 2017, after father was incarcerated for a "road rage incident" against a former

domestic partner and mother was not capable of raising the children.

The children had significant needs and were placed in foster care. Once in foster care,

the children's anemia improved, and all three children started therapy. The children were at risk

in father's care as evident by his convictions for assault and battery, reckless driving, and hit and

run, as well as his self-assessment that he did not need counseling despite Dr. King's and the

Department's recommendations. R.K. revealed that father had hit him "with an open hand and

with a belt on multiple parts of his body," although father denied hitting R.K. anywhere other

than his hands. R.K. required admittance into a residential treatment facility to meet his

behavioral and psychological needs, while X.S. and S.S. received outpatient therapy. This

evidence supported the circuit court's finding that the children had suffered from "chronic abuse" in the parents' care, which caused "severe and irreparable harm" to them.

Furthermore, "Code § 16.1-283(B) requires only that the circuit court consider whether rehabilitation services, if any, have been provided to a parent. Nothing in Code § 16.1-283 or the larger statutory scheme requires that such services be provided in all cases as a prerequisite to termination under subsection B." Toms, 46 Va. App. at 268. The Department previously had provided services to the parents. Father had been provided anger management classes and psychological testing and was referred for individual counseling; however, he chose not to participate in therapy and address his anger issues. His inability to control his anger and consequent violence led to the children returning to foster care after he was arrested. Contrary to father's arguments, the Department was not required to provide additional services.

The children had spent a majority of their lives in foster care. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Based on the record, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(B). "When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights

pursuant to another subsection).  Therefore, we do not need to consider whether the circuit court

erred in terminating father's parental rights pursuant to Code § 16.1-283(C)(2).

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>